IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| THE DENTIST INSURANCE COMPANY, a foreign insurer<br><br>        Plaintiff,<br><br>vs.<br><br>LUKE ST MARIE VALLEY DENTAL GROUP, P.L.L.C, a Washington Professional Limited Liability Company, formerly known as KANE, CHAN-LEE, and ST MARIE, PLLC, dba VALLEY DENTAL GROUP, LUKE EDWARD ST MARIE, D.D.S., PLLC, a Washington Professional Services Corporation, DORIS CHAN-LEE, D.D.S., P.S., a Washington Professional Services Corporation, LUKE EDWARD ST MARIE, D.D.S., individually, ROBERT BRIAN KANE, D.D.S., and CONNIE KANE, individually and the marital community composed thereof, and DORIS CHAN-LEE, D.D.S., and JOHN DOE LEE, individually and the martial community composed thereof, and CARLON P. HURTT as Administrator/Personal Representative of the Estate of Rachel Hurtt.<br><br>        Defendants. | No. 2:21-cv-1227<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Plaintiff The Dentist Insurance Company (TDIC) submits the following Complaint for Declaratory Relief.

## I.      INTRODUCTION

1.1     This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. TDIC seeks a determination that it does not owe a duty to defend or indemnify Doris Chan-Lee, DDS, PS, (Dr. Chan-Lee), Robert B. Kane, DDS, PS, (Dr. Kane) Luke St. Marie Valley Dental, PLLC and or Luke Edward St. Marie D.D.S. (hereinafter collectively, "St Marie") under policies of insurance issued by TDIC with respect to the claims against them in *Carlon P Hurtt as Administrator/Personal Representative of the Estate of Rachel Hurtt vs. Luke St. Marie Valley Dental Group, P.L.L.C., et al.*, King County Superior Court Cause No. 21-2-08644-2 (the "Underlying Lawsuit").

## II.      PARTIES

2.1     Plaintiff TDIC is a foreign insurer organized under the laws of the state of California with its principal place of business in the state of California.

2.2     Defendant Luke St. Marie Valley Dental Group P.L.L.C., is a Washington Professional Limited Liability Company with is principal place of business in King County, Washington.

2.3     Defendant Luke Edwards St Marie, DDS, P.L.L.C., is a Washington Professional Limited Liability Company with its principal place of business in King County, Washington.

2.4     Defendant Luke St. Marie, D.D.S. is a citizen of the state of Washington who resides in King County, Washington.

2.5     Defendant Robert Brian Kane, D.D.S., P.S., is a Washington Professional Services Corporation doing business in King County, Washington

COMPLAINT FOR DECLARATORY RELIEF – 2

2.6     Defendant Doris Chan-Lee, D.D.S., P.S., is a Washington Professional Services Corporation doing business in King County, Washington.

2.7     Defendant Robert Brian Kane D.D.S., and Defendant Connie Kane are husband and wife and are citizens of the State of Washington, residing in King County, Washington.

2.8     Defendant Doris Chan-Lee, D.D.S., and Defendant John Doe Lee are citizens of the State of Washington residing in King County, Washington.

2.9     Defendant Carlon P. Hurtt is the duly appointed administrator and/or personal representative of the Estate of Rachel Hurtt (hereinafter, "the Estate"). Upon information and belief, Hurtt is a citizen of the State of Washington and resides in King County Washington. Upon information and belief, the decedent, Rachel Hurtt, was also a citizen of the State of Washington and resided in King County, Washington.

### III.     JURISDICTION AND VENUE

3.1     This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and diversity amongst the parties is complete.

3.2     Venue is proper with this Court pursuant to 28 U.S.C. § 1391 as this case involves a claim for insurance coverage stemming from the alleged losses that occurred in King County, Washington.

### IV.     FACTS

A.     **Background facts**

4.1     On or about November 20, 2019, Rachel Hurtt overdosed on narcotics and/or controlled substances at the residence of Defendant Luke St. Marie, D.D.S., located at 10741

1   Interlake Avenue North, Seattle, in King County, Washington.  Ms. Hurtt died as a result of the

2   overdose.

3       4.2     At the time of her death, Ms. Hurtt was allegedly in a relationship with Defendant

4   Luke St. Marie, D.D.S., and a patient of Luke St Marie Valley Dental Group, PLLC.

5       4.3     On or about June 30, 2021, Carlon P. Hurtt, (hereinafter "Hurtt"), filed the

6   Underlying Lawsuit against Luke St. Marie Valley Dental Group, P.L.L.C. formerly known as

7   Kane, Chan-Lee and St. Marie, P.L.L.C. dba Valley Dental Group, Like St. Edward St. Marie,

8   D.D.S., P.L.L.C., R. Brian Kane, D.D.S., P.S., Doris Chan-Lee, D.D.S., P.S., Luke Edward St.

9   Marie, D.D.S., Robert Brian Kane, D.D.S., and Connie Kane, individually and as a husband and

10  wife and the marital community composed thereof, and Doris Chan-Lee, D.D.S., and John Doe

11  Lee, individually and as husband and wife and the marital community composed thereof.

12  **B.      Allegations of the Underlying Lawsuit**

13      4.4     The Complaint in the Underlying Lawsuit alleges that Robert Brian Kane, D.D.S.

14  began practicing as a dentist in 1992 and formed Valley Dental Group, LLC in 1997.

15      4.5     The Complaint further alleges that Doris Chan-Lee, DDS, PS, became a member

16  of Valley Dental Group, L.L.C in approximately 2005 and that Valley Dental Group L.L.C.

17  changed its name to Kane and Chan, P.L.L.C. in 2007.

18      4.6     The Complaint also alleges that Kane and Chan P.L.L.C. changed its name to

19  Kane, Chan-Lee, and St. Marie, PLLC in 2016. Kane and Chan-Lee were co-presidents and

20  members of the P.L.L.C. and Luke St. Marie, DDS was a member.  The company eventually,

21  changed its name to Luke St. Marie Valley Dental Group, P.L.L.C.

22      4.7     The Complaint alleges that Luke St. Marie Valley Dental Group, P.L.L.C. and

23  its members bean providing healthcare services to Rachel Hurtt and that Defendant Luke St.

COMPLAINT FOR DECLARATORY RELIEF – 4

Marie eventually began writing prescriptions for, providing to, and delivering narcotic medications and controlled substances to Rachel Hurtt in his capacity as a health care provider.

4.8     It is alleged that he continued to prescribe, provide, and deliver narcotics and controlled substances to Rachael Hurtt to such a degree that she became addicted to the substances.

4.9     The Complaint in the Underlying Lawsuit further asserts that Defendant Luke St. Marie was acting within the course and scope of his employment with the defendants at all times material to the allegations of the Underlying Lawsuit or with actual and constructive knowledge of all defendants.

4.10    The Complaint further alleges that Defendant Luke St. Marie was engaging in said behavior with actual and/or constructive knowledge of both Defendant R. Brian Kane, D.D.S. and Defendant Doris Chan-Lee, D.D.S.

4.11    According to the Complaint, Defendant Luke St. Marie also became addicted to narcotics and controlled substances during this same time period and with the actual and/or constructive notice of the other defendants to the Underlying Lawsuit.

4.12    Further, the Complaint alleges that the other defendants continued to provide Defendant Luke St. Marie with healthcare privileges, including allowing him to use his DEA number to prescribe drugs, despite their knowledge of Defendant Luke St. Marie's unprofessional conduct.

4.13    The Underlying Lawsuit asserts that the defendants knew of and observed, or should have known of and observed in the exercise of ordinary care, of Defendant Luke St. Marie's unprofessional conduct.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

4.14.   The Complaint asserts that the defendants, other than the named spouses, had a statutory and common law duty to report to the appropriate authorities that Defendant Luke St. Marie was engaging in unprofessional conduct and was not able to practice with reasonable skill and safety due to his mental or physical condition which posed a risk to patient safety.

4.15   The Underlying Lawsuit additionally alleges that defendants' behavior, directly and vicariously, constituted unprofessional conduct including, but not limited to negligence, incompetence, and malpractice as defined by statute and common law.

4.16   In addition, the Complaint alleges that Defendant Luke St. Marie's unprofessional conduct continued up until the time of Rachel Hurtt's death from overdoses on November 20, 2019.

4.17   It also alleges that in rendering healthcare services to Rachel Hurtt, all defendants other than the spouses owed Rachel Hurtt a duty to use that degree of skill, care, and learning expected of a reasonably prudent healthcare provider and that all defendants failed to exercise the required standard of care in providing healthcare to Rachel Hurtt.

4.18   The Complaint further states that Defendant Luke St. Marie owed an independent duty to Ms. Hurtt to exercise ordinary care for the safety of Ms. Hurtt and that he failed in that duty.

4.19   With respect to the other defendants, other than spouses, the Complaint alleges that they too were negligent in failing to exercise ordinary care for Rachel Hurtt's safety and for failing to supervise Defendant Luke St. Marie given their actual and/or constructive knowledge of his dangerous tendencies and unprofessional conduct.

4.20   The Complaint asserts that Defendant Like St. Marie also failed to inform Rachel Hurtt of material facts relating to the potential for addiction to the narcotics he was prescribing

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1   and/or providing, failed to obtain informed consent, and that his conduct proximately caused

2   Ms. Hurtt's overdose death.

3        4.21    Finally, the Complaint asserts that all defendants' negligence proximately caused

4   Rachel Hurtt's addiction and her eventual and foreseeable overdose death in Defendant Luke

5   St. Marie's bed in Seattle, Washington.

6        4.22    The Underlying Lawsuit asserts claims for wrongful death, general negligence,

7   negligent supervision, failing to follow the accepted standard of care, malpractice, and lack of

8   informed consent.

9   **C.**    **Claim and TDIC's Response Thereto**

10        4.23    On June 29, 2021, TDIC received tenders for defense and indemnity for the

11   claims in the Underlying Lawsuit.

12        4.24    TDIC promptly acknowledged the tenders and initiated a coverage investigation.

13        4.25    TDIC accepted the tender for defense from Defendants Luke St. Marie, D.D.S.,

14   Luke Edward St. Marie, P.L.L.C., Luke St. Marie, P.L.L.C., and Luke St. Marie Valley Dental

15   Group, P.L.L.C. pursuant to a full reservation of rights.

16        4.26    TDIC also accepted the tender for defense from Defendants Robert B. Kane,

17   D.D.S., P.S. pursuant to a full reservation of rights.

18        4.28    In addition, TDIC the accepted tender for defense from Doris Chan-Lee D.D.S.,

19   P.S. pursuant to a full reservation of rights.

20   **C.**    **The TDIC Policies**

21        4.9    TDIC issued a Dentists & Oral Surgeons Professional Liability Policy to named

22   insureds Luke St. Marie DDS, and Luke St. Marie Valley Dental Group PLLC, under policy

23   number WA524857, with a policy period of July 10, 2020 to July 10, 2021.

1    4.10    TDIC issued a Dentists & Professional Liability Policy to named insured R. Brian

2  Kane DDS, PS, under policy number 507731, with a policy period of January 01, 2021, to

3  January 01, 2022.

4    4.11    TDIC issued a Dentists & Professional Liability Policy to named insured D T H

5  Chan-Lee DDS, under policy number 521773, with a policy period of January 01, 2021, to

6  January 01, 2022.

7    4.12    All three policies contain substantially the same forms and policy language (the

8  three policies are hereinafter collectively referred to as the "TDIC Policies").

9    4.13    The Professional Liability Coverage Part's Insuring Agreement of the TDIC

10  Policies provides as follows:

11    II.    **COVERAGE AGREEMENTS**

12    A.    **Professional Liability**

13        We will pay the sums that an "Insured" is legally
    obligated to pay as "Damages" for a "Claim"

14        because of a "Dental Incident" provided the
        "Claim" is first made during the "Policy Period"

15        and the "Dental Incident" occurred on or after the
        "Retroactive Date".

16        . . .

17    C.    **Defense, Investigation and Settlement**

18    a.    We will defend a covered "Claim", and will do so
        regardless of whether we believe such "Claim" to

19        be based on false, groundless or fraudulent
        allegations. We may investigate any "Claim" at our

20        sole discretion, as we deem necessary and proper.
        Payment or tender of payment by us to the claimant

21        or the court, as applicable, of an amount equal to
        the available limit, ends our duty to defend,

22        investigate or to settle a "Claim".

23    b.    With respect to a covered "Claim", we shall have
        the sole and exclusive right and obligation to

COMPLAINT FOR DECLARATORY RELIEF – 8

investigate, negotiate, evaluate, control and direct the defense of such matter, including the right to select legal counsel on behalf of an "Insured".

. . .

d.    We are not obligated (a) pay any "Claim" or judgment or to defend any "Suit" after the applicable limit of our liability has been exhausted by the payment of judgments or settlements, (b) take an appeal from any order, judgment or judicial or administrative determination of any kind, or (c) obtain the "Named Insured's" consent to settle a "Claim" or "Suit" after the death or adjudication of legal incompetency of the person whose acts or omissions gave rise to the "Claim" or "Suit".

e.    We have no duty to and will not defend any "Claims" not covered by this insurance policy.

. . .

PL001 (01/2015)

4.14    The TDIC Policies contain the following applicable definitions:

a.    "Claim"(s) means a demand for money or service because of an "Injury" arising out of a "Dental Incident". All "Claims" made by one or more persons that arise out of the same "Dental Incident" or related "Dental Incidents" will be considered one "Claim".

b.    "Damages" means any monetary amount the "Named Insured" is legally obligated to pay for a "Claim" covered by this insurance policy arising from a judgment or award, or from a settlement entered into by the "Named Insured" with our written consent and approval. "Damages" do not include that part of a judgment, award or settlement for interest, fees, fines, penalties, taxes or punitive, exemplary, trebled or multiplied "damages", criminal or civil fines, penalties or restitution imposed by criminal sentence. "Damages" also do not include the return of fees or charges for services rendered, or any profits related to such fees or charges. "Damages" does include that part of a judgment, award or settlement for legal fees

COMPLAINT FOR DECLARATORY RELIEF – 9

incurred by a claimant when the "Named Insured" is required to pay such fees.

c.   "Defense Costs" and "Charges and Expenses" mean reasonable legal fees and expenses incurred by us in the investigation, settlement, defense, adjustment or appeal of "Claims". "Defense Costs" and "Charges and Expenses" do not include attorneys fees personally assumed by the "Insured" or legal fees incurred by a claimant unless required by us to do so.

. . .

e.   "Dental Incident" and "Dental Incidents" means the actual or alleged negligent act, or series of negligent acts, errors or omissions arising out of the rendering of, or failure to render "Dental Services" by the "Named Insured" or any person for whose negligent acts or omissions the "Named Insured" is legally responsible, and which are performed in the practice of the "Named Insured's" profession as a Dentist or Oral Surgeon.

f.   "Dental Services" means:

i.   The practice of Dentistry in the evaluation, diagnosis, prevention and treatment of human diseases, disorders and conditions of the oral cavity, the maxillofacial area and the adjacent and associated structures, within the Dentist's scope of licensure and according to the standards and ethics of the profession and applicable law. "Dental PL0001 (01/2015) Page 2 of 14 Services" does not include "Medical Services", unless the "Medical Services" are provided by an "Insured" who is an Oral Surgeon and are within the scope of licensure of the Oral Surgeon.

ii.   Services by the "Named Insured" as a member of a formal accreditation, standards review or similar professional dental society or "Peer Review Program".

. . .

COMPLAINT FOR DECLARATORY RELIEF – 10

m.      "Insured" means the individual or organization identified in the Declarations as the "Named Insured" and each of the following:

i.      Any "Employee" of the "Named Insured" while acting within the scope of his or her duties and under the direct supervision of the "Named Insured".

ii.     Any Corporation or Partnership listed in the Declarations as a "Named Insured".

iii.    Any partner, director, shareholder of the Partnership or Corporation with respect to negligent acts, errors or omissions of others; provided that any such partner, director or stockholder shall not be an "Insured" under this insurance policy with respect to their rendering of or failure to render "Dental Services".
. . .

o.      "Named Insured" means the person(s) or organization(s) identified as such in the Declarations of this policy.

PL0001 (01/2015)

4.15    The TDIC Policies contain the following exclusion pertaining to physical or mental abuse:

Even if a "Claim" that arises out of a "Dental Incident" is made against an "Insured" or there are costs related to Licensing Board or "Governmental Regulatory Body" investigations, we will not pay sums that the "Named Insured" is legally obligated to pay as "Damages" for the "Claim" if the "Claim" wholly or partly arises out of, directly or indirectly results from, is a consequence of, or in any way involves:
. . .

c.      Actual, alleged or threatened harassment, physical or mental abuse, assault or battery, detention, false arrest, wrongful imprisonment, false imprisonment, sexual misconduct, including sexual harassment, sexual molestation, sexual assault, and physical or mental sexual abuse. This exclusion extends to liability arising out of acts taken in furtherance of or conjunction with such

COMPLAINT FOR DECLARATORY RELIEF – 11

misconduct, including acts taken to put the target of the misconduct in a position of vulnerability to the misconduct, including but not limited to grooming, fraud, deception, bribery, outrage, kidnapping, imprisonment, invasion of privacy and any other act, as well as acts taken to hide or avoid detection of such misconduct.

PL0001 (01/2015).

4.16    The TDIC Policies contain the following exclusion pertaining to a violation by a mandated reporter:

Even if a "Claim" that arises out of a "Dental Incident" is made against an "Insured" or there are costs related to Licensing Board or "Governmental Regulatory Body" investigations, we will not pay sums that the "Named Insured" is legally obligated to pay as "Damages" for the "Claim" if the "Claim" wholly or partly arises out of, directly or indirectly results from, is a consequence of, or in any way involves:

. . .

n.    The actual or alleged violation of the "Insured's" duty as a mandated reporter, including but not limited to the mandated reporting of child abuse, molestation, domestic violence, or elder abuse, as applicable.

PL0001 (01/2015).

4.17    The TDIC Policies contain the following exclusion pertaining to acts unrelated to the performance of "Dental Services":

Even if a "Claim" that arises out of a "Dental Incident" is made against an "Insured" or there are costs related to Licensing Board or "Governmental Regulatory Body" investigations, we will not pay sums that the "Named Insured" is legally obligated to pay as "Damages" for the "Claim" if the "Claim" wholly or partly arises out of, directly or indirectly results from, is a consequence of, or in any way involves:

. . .

o.    An act unrelated to the performance of "Dental Services" which constitutes professional misconduct as defined by the applicable licensing body of the state in which the "Insured's" practice is located.

PL0001 (01/2015).

COMPLAINT FOR DECLARATORY RELIEF – 12

4.18    The TDIC Policies contain the following exclusion pertaining to acts unrelated to criminal acts:

> Even if a "Claim" that arises out of a "Dental Incident" is made against an "Insured" or there are costs related to Licensing Board or "Governmental Regulatory Body" investigations, we will not pay sums that the "Named Insured" is legally obligated to pay as "Damages" for the "Claim" if the "Claim" wholly or partly arises out of, directly or indirectly results from, is a consequence of, or in any way involves:
> . . .
> q.      A dishonest, fraudulent, criminal or malicious act(s) or omission(s) by an "Insured".

PL0001 (01/2015).

4.19    The TDIC Policies contain the following exclusions pertaining to intentional acts: The Policies contain the following exclusion that may operate to preclude coverage in whole or in part.

> Even if a "Claim" that arises out of a "Dental Incident" is made against an "Insured" or there are costs related to Licensing Board or "Governmental Regulatory Body" investigations, we will not pay sums that the "Named Insured" is legally obligated to pay as "Damages" for the "Claim" if the "Claim" wholly or partly arises out of, directly or indirectly results from, is a consequence of, or in any way involves:
> . . .
> r.      An intentional act of or by an "Insured" which a reasonable person could expect to result in or cause "Injury".

PL0001 (01/2015).

4.20    The TDIC Policies contain the following provision with regard to an insured's duties in the event of a claim:

A.      **INSUREDS DUTIES IN THE EVENT OF A CLAIM OR POTENTIAL CLAIM**

COMPLAINT FOR DECLARATORY RELIEF – 13

1.  The "Named Insured" must promptly notify us of every "Dental Incident" which may result in a "Claim". Notice should include

    i.    How, when and where the "Dental Incident" took place;

    ii.    The names and addresses of any injured person; and

    iii.    Any documents, materials or information necessary to identify the circumstances.

If a "Claim" is made or "Suit" is brought against any "Insured", the "Named Insured" must promptly notify us.

2.  If a "Claim" is made or "Suit" is brought against any "insured", the "Named Insured" shall immediately forward to us every demand, notice, summons or other communication received by him or his representative.

3.  An "insured" shall cooperate with us in all matters pertaining to a "Claim" or "Suit" and, upon our request, shall provide information, meet with our representatives and/or legal counsel, attend hearings and trials, assist in making settlement, securing and giving evidence. An "Insured" shall not voluntarily make any payment, assume any obligation, or incur any expense with respect to a covered "Claim", except with our prior written consent. To undertake such action without our consent may result in voiding of this policy.

4.  If a "Claim" involves both covered and non-covered "Dental Services", an "Insured" must cooperate in securing a bifurcation of the hearing, arbitration or trial as to covered "Claims" and "Damages", as well as to non-covered "Claims" and "Damages". If requested by us, the "Insured" must cooperate in securing a special verdict form that segregates covered "Claims" from non-covered "Claims", as well as covered "Damages" from non-covered "Damages".

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1  PL0001 (01/2015).

2  **V.    THERE ARE ACTUAL JUSTICIABLE CONTROVERSIES**

3      5.1    TDIC incorporates by reference and re-alleges paragraphs 1.1 through 4.20 above

4  as if fully set forth herein.

5      5.2    The TDIC Policies provide coverage for sums that an "insured" becomes legally

6  obligated to pay as "damages" arising from a claim first made against the insured and reported

7  to TDIC during the policy period if arising from a "Dental Incident".

8      5.3    There is an actual and justiciable controversy as to whether Dr. Kane and/or Dr.

9  Chan-Lee qualify as an "insured" under TDIC Policy WA524857.

10      5.4    There is an actual justiciable controversy as to whether the Insuring Agreement

11  of the TDIC Policies is triggered for the claims asserted against St. Marie, Dr. Kane, and Dr.

12  Chan-Lee.

13      5.5    The TDIC Policies define "Damages" to mean any monetary amount the "Named

14  Insured" is legally obligated to pay for a "Claim" covered by these insurance policies arising

15  from a judgment or award, or from settlement entered into by the "Named Insured" with our

16  written consent and approval.

17      5.6    There is an actual justiciable controversy as to whether the claims in the

18  Underlying Lawsuit qualify as "Damages" as that term is defined by the TDIC Policies.

19      5.7    The TDIC Policies define "Claim(s)" to mean a demand for money or service

20  because of an "Injury" arising out a "Dental Incident".

21      5.8    There is an actual justiciable controversy as to whether the claims in the

22  Underlying lawsuit qualify as a "Claim(s)" as that term is defined by the TDIC Policies.

23

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

5.9     The TDIC Policies define "Dental Incident" to mean the actual or alleged negligent act, or a series of negligent acts, errors, or omissions, arising out of the rendering of, or failure to render "Dental Services" by the "Named Insured" or any person for whose negligent acts or omissions the "Named Insured" is legally responsible.

5.10    There is an actual and justiciable controversy as to whether the claims in the Underlying Lawsuit arise out of a "Dental Incident" as that term is defined by the TDIC Policies.

5.11    The TDIC Policies define "Dental Services" to mean the practice of Dentistry in the evaluation, diagnosis, prevention, and treatment of human diseases, disorders and conditions of the oral cavity.

5.12    There is an actual and justiciable controversy as to whether the claims in the Underlying Lawsuit arise out of the rendering of "Dental Services" as that term is defined by the TDIC Policies.

5.13    There is an actual and justiciable controversy as to whether St. Marie's continuous prescriptions of narcotic medication to Hurtt, without providing her knowledge of the potential side effects, and eventually leading to Hurtt's overdose qualifies as providing "Dental Services" or a "Dental Incident".

5.14    The TDIC Policies specifically exclude coverage for any claim involving actual, alleged, or threatened harassment, physical or mental abuse, assault or battery, detention, false arrest, wrongful imprisonment, false imprisonment, sexual misconduct, including sexual harassment, sexual molestation, sexual assault, and physical or mental sexual abuse. The exclusion extends to liability arising out of acts taken in furtherance of or conjunction with such misconduct, including acts taken to put the target of the misconduct in a position of vulnerability to the misconduct, including but not limited to grooming, fraud, deception, bribery, outrage,

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1  kidnapping, imprisonment, invasion of privacy and any other act, as well as acts taken to hide or

2  avoid detection of such misconduct.

3       5.15    There is an actual and justiciable controversy as to whether claims against St.

4  Marie arise out of deception, bribery, or harassment due to the fact that Hurtt overdosed in St.

5  Marie's bed at his home, and allegedly continued to prescribe her narcotic medication without

6  warning her of the side effects and dangers and furthering her and/or his own addiction to the

7  substances.

8       5.16    The TDIC Policies specifically exclude coverage for any claim arising the actual

9  or alleged violation of an "Insured's" duty as a mandated reporter.

10       5.17    There is an actual and justiciable controversy as to whether claims against Dr.

11  Kane and Dr. Chan-Lee arise out of their alleged violation as mandated reporters failing to report

12  St. Marie's substance abuse, or the danger he put Hurtt in by prescribing her narcotic medication,

13  when Dr. Kane and Dr. Chan-Lee allegedly had either actual or constructive notice of St. Marie's

14  dangerous actions.

15       5.18    The TDIC Policies specifically exclude coverage for any claim arising from any

16  act unrelated to the performance of "Dental Services" which constitutes professional misconduct

17  as defined by the applicable licensing body of the state in which the "Insured's" practice is

18  located.

19       5.19    There is an actual and justiciable controversy as to whether St. Marie's

20  prescribing of narcotic medication to a patient until she allegedly foreseeably overdosed at his

21  home in his bed is related to the performance of "Dental Services" as that term is defined in the

22  TDIC Policies.

23

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

5.20    There is an actual and justiciable controversy as to whether St. Marie's prescribing of narcotic medications to a patient without informing her of the potential dangers and allegedly leading to her overdoes constitutes professional misconduct as defined by the applicable licensing body of Washington.

5.21    The TDIC Policies specifically exclude coverage for any claim arising from dishonest, fraudulent, criminal or malicious acts or omissions by an "Insured".

5.22    There is an actual and justiciable controversy as to whether St. Marie committed a dishonest, fraudulent, criminal, or malicious act or omission when he failed to warn Hurtt of the dangers of narcotic medication and continued to prescribe them to her until she overdosed.

5.23    The TDIC Policies specifically exclude coverage for any intentional act of or by an "Insured" which a reasonable person could expect to result in or cause "Injury".

5.24    There is an actual and justiciable controversy as to whether St. Marie's continued prescriptions of narcotic medication to Hurtt when he knew or should have known she was addicted, and he was allegedly addicted, constitutes an intentional act that a reasonable person could expect to result in or cause injury.

5.25    There is an actual and justiciable controversy so to whether Dr. Kane and Dr. Chan-Lee's decision to not report St. Marie to the proper authorities constitutes an intentional act that a reasonable person could expect to result in or cause injury.

5.26    The TDIC Policies require that insured shall provide notice in accordance of the Policies when an insured becomes aware of a "Dental Incident" that may result in a Claim.

5.27    There is an actual and justiciable controversy as to whether TDIC was provided with notice in accordance with the policies regarding a "Dental Incident" because St. Marie, Dr. Kane, and Dr. Chan-Lee have not indicated to TDIC that their acts may give rise to a claim.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

5.28    The TDIC Policies requires that anyone making a claim under the policies must cooperate with TDIC in several respects, including but not limited to, providing notice of the claims or suits and providing access to records.

5.29    There is an actual and justiciable controversy as to whether Dr. Kane, Dr. Chan-Lee and St. Marie have failed to cooperate with TDIC by failing to provide notice of the claim or suit or provide records.

5.30    In addition to the provisions cited above, TDIC pleads all other conditions, terms, provisions, limitations, definitions, and exclusions of the TDIC Policies, which may be found to be applicable to TDIC's investigation and defense of these claims and TDIC reserves the right to amend its Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## VI.    CLAIM FOR DECLARATORY JUDGMENT

6.1    TDIC incorporates by reference and re-alleges paragraphs 1.1 through 5.30 above as if fully set forth herein.

6.2    Actual and justiciable controversies exist as to whether TDIC owes any defense St. Marie, Dr. Kane, or Dr. Chan-Lee under the TDIC Policies.

6.3    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter a judicial determination that TDIC does not have an obligation to defend St. Marie for the claims in the Underlying Lawsuit.

6.4    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter a judicial determination that TDIC does not have an obligation to defend Dr. Kane for the claims in the Underlying Lawsuit.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1    6.5    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter

2  a judicial determination that TDIC does not have an obligation to defend Dr. Chan-Lee for the

3  claims in the Underlying Lawsuit.

4    6.6    Actual and justiciable controversies exist as to whether TDIC owes any indemnity

5  obligation to St. Marie, Dr. Kane, or Dr. Chan-Lee under the TDIC Policies for the claims in the

6  Underlying Lawsuit.

7    6.7    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter

8  a judicial determination that TDIC does not have an obligation to indemnify St. Marie for the

9  claims in the Underlying Lawsuit.

10    6.8    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter

11  a judicial determination that TDIC does not have an obligation to indemnify Dr. Kane for the

12  claims in the Underlying Lawsuit.

13    6.9    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter

14  a judicial determination that TDIC does not have an obligation to indemnify Dr. Chan-Lee for

15  the claims in the Underlying Lawsuit.

16    6.10    Actual and justiciable controversies exist as to whether St. Marie, Dr. Kane, and

17  Dr. Chan-Lee's failures to comply with the terms and conditions of the TDIC Policies prejudiced

18  TDIC such that coverage is precluded.

19    6.11    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter

20  a judicial determination that St. Marie failed to comply with the terms and that such failure to

21  cooperate prejudiced TDIC and precludes coverage under the terms and conditions of the TDIC

22  Policies.

23

COMPLAINT FOR DECLARATORY RELIEF – 20

6.12    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter a judicial determination that Dr. Kane failed to comply with the terms and that such failure to cooperate prejudiced TDIC and precludes coverage under the terms and conditions of the TDIC Policies.

6.13    TDIC requests that this Court grant declaratory relief in favor of UFCC and enter a judicial determination that Dr. Chan Lee failed to comply with the terms and that such failure to cooperate prejudiced TDIC and precludes coverage under the terms and conditions of the TDIC Policies.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, TDIC, having specifically alleged the foregoing, now prays for the following relief:

1.    For a declaration of the rights and obligations of the parties under the TDIC Policies

2.    For a declaration that UFCC does not have a duty to defend St. Marie under the TDIC Policies for the claims in the Underlying Lawsuit.

3.    For a declaration that UFCC does not have a duty to defend Dr. Kane under the TDIC Policies for the claims in the Underlying Lawsuit.

4.    For a declaration that UFCC does not have a duty to defend Dr. Chan-Lee under the TDIC Policies for the claims in the Underlying Lawsuit.

5.    For a declaration that UFCC does not have a duty to indemnify St. Marie under the TDIC Policies for the claims in the Underlying Lawsuit.

6.    For a declaration that UFCC does not have a duty to indemnify Dr. Kane under the TDIC Policies for the claims in the Underlying Lawsuit.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

7.    For a declaration that UFCC does not have a duty to indemnify Dr. Chan-Lee under the TDIC Policies for the claims in the Underlying Lawsuit.

8.    For a declaration that St. Marie's failure to cooperate has prejudiced TDIC such that TDIC is relieved from any duty to defend or indemnify St. Marie for the claims in the Underlying Lawsuit.

9.    For a declaration that Dr. Kane's failure to cooperate has prejudiced TDIC such that TDIC is relieved from any duty to defend or indemnify Dr. Kane for the claims in the Underlying Lawsuit.

10.    For a declaration that Dr. Chan-Lee's failure to cooperate has prejudiced TDIC such that TDIC is relieved from any duty to defend or indemnify Dr. Chan-Lee for the claims in the Underlying Lawsuit.

11.    For all pre-judgment and post-judgment interest as allowed by applicable law.

12.    For attorney fees and costs allowed by applicable statute and law.

13.    For other and further relief as the Court deems just and equitable.

DATED this 8th day of September, 2021.

LETHER LAW GROUP

*/s/ Thomas Lether*
Thomas Lether, WSBA #18089
*/s/ Eric J. Neal*
Eric J. Neal, WSBA #31863
1848 Westlake Avenue N, Suite 100
Seattle, WA 98109
P: (206) 467-5444/F: (206) 467-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Attorneys for The Dentists Insurance Company*